**FORM FOR USE IN APPLICATIONS**

**FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254**

RECEIVED

Marcus Antwan Russaw

2005 AUG 22 A 10: 57

Name

197264

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Prison Number

William E. Donaldson Corr. Fac.

Place of Confinement

United States District Court  Middle  District of Ala

Case No.  2:05 CV 798 - F

(To be supplied by Clerk of U. S. District Court)

Marcus Antwan Russaw ___, PETITIONER

(Full Name)  (Include name under which you were convicted)

_____ , RESPONDENT

(Name of Warden, Superintendent, Jailor, or authorized person
having custody of Petitioner)

and

THE ATTORNEY GENERAL OF THE STATE OF  Troy King

_____ , ADDITIONAL RESPONDENT.

(if petitioner is attacking a judgement which imposed a sentence to be served in the <u>future</u>, petitioner must fill in the name of the state where the judgment was entered.  If petitioner has a sentence to be served in the <u>future</u> under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. §2255, in the federal court which entered the judgment.)

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN
STATE CUSTODY**

**INSTRUCTIONS--READ CAREFULLY**

(1) This petition must be legibly handwritten or typewritten and signed by the petitioner under penalty of perjury.  Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

N955

The Judicial Conference of the United States has adopted, effective 1/1/83, the 8½ x 11 inch paper size standard for use throughout the federal judiciary and directed the elimination of the use of legal size paper. All pleadings, etc. filed after 12/31/82 must be on 8½ x 11 inch paper, otherwise we cannot accept them.

(2) Additional pages are not permitted except with respect to the <u>facts</u> which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt of a fee of $5 your petition will be filed if it is in proper order.

(4) If you do not have the necessary filing fee, you may request permission to proceed <u>in forma pauperis</u>, in which event you must execute the declaration on the last page, setting forth information establishing your inability to prepay the fees and costs or give security therefor. If you wish to proceed <u>in forma pauperis</u>, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) Only judgments entered by one court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

(7) When the petition if fully completed, <u>the original and two copies * must be mailed to the Clerk of the United States District Court whose address is</u>:

P.O. Box 711
Montgomery, Alabama 36101

(8) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

**\*If you are proceeding <u>in forma pauperis</u>, only the original petition needs to be filed with the Court.**

PETITION

1. Name and location of court which entered the judgment of conviction under attack _Barbour County Circuit Court; Clayton, AL_

2. Date of judgment of conviction _August 5, 2003_

3. Length of sentence _Life_ Sentencing Judge _Burt Smithard_

4. Nature of offense or offenses for which you were convicted: _____
_____ *Attempted Murder*/Brualary
_____ *CC-2003-0120* _____ /*CC-2003-0121*

5. What was your plea? (check one)
   (a) Not guilty ( ✓ )
   (b) Guilty    (  )
   (c) Nolo contendere  (  )
   If you entered a guilty plea to one count or indictment, and a not guilty
   plea to another count or indictment, give details: _____
   _____
   _____
   _____

6. Kind of trial:      (Check one)
   (a) Jury  ( ✓ )
   (b) Judge only  (  )

7. Did you testify at the trial?  Yes ( )    No ( ✓ )

8. Did you appeal from the judgment of conviction?   Yes ( ✓ )   No ( )

9. If you did appeal, answer the following:
   (a) Name of court *Alabama Court of Criminal Appeals*
   (b) Result *Affirmed*
   (c) Date of result *August 20, 2004*
   If you filed a second appeal or filed a petition for certeorari in the Supreme
   Court, give details: _____
   _____
   _____
   _____

10. Other than a direct appeal from the judgment of conviction and sentence,
    have you previously filed any petitions, applications, or motions with respect
    to this judgment in any court, state or federal?   Yes ( )    No ( )

11. If your answer to 10 was "yes", give the following information:
    (a) (1) Name of court _____
        (2) Nature of proceeding _____
        (3) Grounds raised _____
        _____
        _____
        _____
        _____
        _____
        (4) Did you receive an evidentiary hearing on your petition, application
            or motion?   Yes ( )    No ( )
        (5) Result _____
        (6) Date of result _____

(b) As to any second petition, application or motion give the same information:
    (1) Name of court _____
    (2) Nature of proceeding _____
    _____
    (3) Grounds raised _____
    _____
    _____
    _____
    _____
    _____
    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?  Yes ( )    No ( )
    (5) Result _____
    (6) Date of result _____
(c) As to any third petition, application or motion, give the same information:
    (1) Name of Court _____
    (2) Nature of proceeding _____
    _____
    (3) Grounds raised _____
    _____
    _____
    _____
    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?  Yes ( )    No ( )
    (5) Result _____
    (6) Date of result _____
(d) Did you appeal to the highest state court having jurisdiction the result of any action taken on any petition, application or motion:
    (1) First petition, etc.        Yes ( )    No ( )
    (2) Second petition, etc.       Yes ( )    No ( )
    (3) Third petition, etc.       Yes ( )    No ( )
(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____

12. State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground.

> CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. As to all grounds on which you have previously exhausted state court remedies, you should set them forth in this petition if you wish to seek federal relief. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them. However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A.  Ground one: _____
_____
Supporting FACTS  (tell your story briefly without citing cases or law): .
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

B.  Ground two: _____
_____
Supporting FACTS  (tell your story briefly without citing cases or law): .
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

C.  Ground three: _____
_____
Supporting FACTS  (tell your story briefly without citing cases or law): .
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

D. Ground four: _____
_____

Supporting FACTS  (tell your story briefly without citing cases or law): .
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented
in any other court, state or federal state briefly what grounds were not so
presented, and give your reasons for not presenting them: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

14. Do you have any petition or appeal now pending in any court, wither state
or federal, as to the judgment under attack?    Yes ( )  No ( )

15. Give the name and address, if known, of each attorney who represented
you in the following stages of the judgment attacked herein:
(a) At preliminary hearing Paul W. Brunson, Jr.
P.O. Box 475, Clayton, AL 36016
(b) At arraignment and plea John Robertson
P.O. Box 475, Clayton, AL 36016
(c) At trial Paul W. Brunson, Jr., and John Robertson
P.O. Box 475, Clayton, AL 36016
(d) At sentencing John Robertson and Paul W. Brunson, Jr.
P.O. Box 475, Clayton, AL 36016
(e) On appeal Rebecca Gettys Kelly
P.O. Box 605, Clayton, AL 36016

(f) In any post-conviction proceeding _N/A_ _____

(g) On appeal from any adverse ruling in a post-conviction proceeding: ____
_N/A_ _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ( )    No (✓)

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes (✓)    No ( )

(a) If so, give name and location of court which imposed sentence to be served in the future: _Barbour County Circuit Court;_
_Clayton, Alabama_

(b) And give date and length of sentence to be served in the future: ____
_Life Without Parole_

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes (✓)    No ( )

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_Marcus C. Russaw_
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.    Executed on _August 15, 2005_.
(date)

_Marcus C. Russaw_
Signature of Petitioner

Cont. of pg. 5(B)

**BROUNDS  OF  PETITION**

**TRIAL COURT WAS WITHOUT JURISDICTION
TO RENDER JUDGMENT OR TO IMPOSE
SENTENCE WHERE THE INDICTMENT IS
VOID IN THAT IT FALLS TO INCLUDE
AN ESSENTIAL ELEMENT OF THE CRIME
ON ATTEMPED MURDER!**

Attached to this petition is what the Clerk's Office
respresents to be a copy of the indictment charging Petitioner
with attempted murder; that indictment reads, in pertinent
part, as follows:

No:_____                          G.J. No.ES-03-063

THE STATE OF ALABAMA, Barbour COUNTY
Circuit Court - Third Judicial Circuit

### COUNT 1

The Grand Jury of said county charge that, before the finding of
this indictment, MARCUS ANTWAN RUSSAW, whose name is otherwise
unknown to the Grand Jury, did on or about October 4, 2001, with
the intent to commit the crime of murder (Section 13A-6-2 of the
Alabama Criminal Code) attempt to intentionally cause the death
of another person, ELMER "ELMIRA" JACKSON, by beating her about
her face and/or body, in violation of Section 13A-4-2 of the
Code of Alabama,

against the peace and dignity of the State of Alabama.

BOYD WHIGHAM      BEN C.   REEVES, JR.
District Atty.   Chief Asst. Dist. Atty.
Third Judicual Circuit

person or of another person."

These two sections states the elements of attempted murder are: i), "**intent to kill**, and ii), **overt act towards commission of that intent.**

For an indictment to adqeuately charge Petitioner with a crime of attempted murder, the indictment must contain both essential elements.

Because Petitioner indictment is lacking the second elements; to wit: "**...he does any overt act towards the commission of such offense.**", the indictment is not sufficient to charge Petitioner with any offense.

In <u>Grant v. State</u>, _____ So.2d _____, (Ala. Crim. App. 2004),(CR-03-2050), the court held: "The Alabama Supreme Court addressed a similar problem in Ex parte Lewis, 811 So.2d 485 (Ala. 2001). In <u>Lewis,</u> the indictment charging Lewis with second-degree assault did not include the essential element of 'inten[ding] to cause physical injury,' as required by §13A-6-21(a)(2), Alabama Code 1975. The Alabama Supreme Court held that the indictment was void 'for its failure to charge an essential element of that offense' and that 'Lewis could not waive the defect... .' 811 So 2d at 489. In so holding, the Alabama Supreme Court applied the following law and analysis:

"'"In <u>Ivey v. State</u>, 710 So.2d 946, (Ala. Crim. App. 1998), the Court of Criminal Appeals reversed two convictions of assult in the second degree under §13A-6-21(a)(4) because the jury had not been instructed that in order to convict the defendant it

2

had to find that he intended to cause the physical injury. The
jury was instructed only that it had to find that the defendant
had intended to prevent a peace officer from performing a lawful
duty and that the defendant had caused physical injury to a
person. This instruction omitted an essential element of the
charge. The Court of Criminal Appeals stated:

> """In the present case, the trial court's
> instruction failed to correctly define the
> offense of assault in the second degree
> because the instruction failed to include as an
> element of the offense that the defendant
> intended to cause physical injury to any
> person. Instead, the trial court insdvertently
> instructed the jury on the elements of
> third-degree assault. The incorrect instruction,
> in essence, allowed the jury to find the
> appellant guilty of second-degree assault under
> a lesser evidentiary standard than was required
> by law, and thereby lowered the state's burden
> of proof. Because the jury was incorrectly
> instructed concerning the elements of
>  second-degree assault, the appellant's
> convictions for second-degree assault
> must be set aside."

"'710 So.2d at 948.

> "' Failure to allege an essential element of
> the charged offense is a jurisdictional defect
> at trial or on direct appeal does not constitute
> a waiver. Byrd v. State, 763 So.2d 987 (Ala. Crim.
> App. 2000), citing Heidelberd v. State, 575 So.
> 2d. 621, 622 (Ala. Crim. App. 1991). According
> to Ivry, "intent to cause physical injury" is
> a essential element of assault in the second
> degree under subsection (a)(4).

> "'In Barbee v. State, 417 So.2d 611 (Ala. Crim. App.
> 1982), the Court of Criminal Appeals reversed a
> conviction for theft of property under §13A-8-2,
> Ala. Code 1975, because the indictment failed to
> state the essential element of "intent to deprive
> the owner of his property." The court stated:

"'"Failure to charge a offense is the kind of defect involved in due process of law and cannot be waived. Nelson v. State, 50 Ala. App. 285,278 So.2d 734 (1973). Although the law does not comple a 'ritual of words' in an indictment, 'the omission of a element of the crim, however, is not a mere formality that may be waived.' United States v. Purvis, 580 F.2d 853, 857,858, rehearing denied, 585 F.2d 520 (5th Cir. 1978), cert. denied, 440 U.S. 914, 99 S. Ct. 1229, 59 L.Ed.2d 463 (1979). 'An indictment that fails to allege each material element of a offense fails to charge that offense.' United States v. London, 550 F.2d 206, 211 (5th Cir. 1977). 'Failure to charge specific intent is but a particular aspect of the failure to charge an offense.' Purvis, 580 F.2d at 858.

"'"A defect in the indictment associated with an essential element of the offense which leaves the accused unaware of the nature and cause of the charge cannot be waived. Crews v. State, 374 So.2d 436, 442-43 (Ala. Crim. App. 1979); Andrews v. State, 344 So.2d 533, 534-35 (Ala. Crim. App.), cert. denied, 344 So.2d 538 (Ala. 1977). When an indictment is void and does not charge an offense, this Court is bound to take notice of such a defect even in the absense of an objection. Edwards v. States, 379 So.2d 336,338 (Ala. Crim. App. 1979), cert. denied, 379 So.2d 339 (Ala. 1980)."

"'417 So.2d at 613; see also Felder v. State, 512 So.2d 817 (Ala. Crim. App. 1987).,

"811 So. 2d at 487-88.

By applying the same law and analysis to the case at hand and considering the attempted murder statute, this court must hold that the indictment against Petitioner is void in that if fails to charge an essential element of the offense of Attempted Murder,

that is the indictment fails to charge Petitioner with that:
**"he does any overt act towards the commission of such offense"**.

Petitioner emphasize that, as a matter of the trial courts
sudject matter jurisdiction, this claim could not be waived,
therefore, Petitioner's conviction and sentnece is void, and
the Attempted Murder indictment against him must be dismissed.

WHETHER TRIAL COUNSEL'S WERE INEFFECTIVE
DUE TO ACTUAL CONFLICT OF INTEREST WHERE
THAT CONFLICT HAD ADVERSE EFFECT ON
TRIAL COUNSEL'S PERFORMANCE WHICH HAD A
PREJUDICIAL EFFECT AND DEPRIVED
PETITIONER OF A FAIR TRIAL?

During the pretrial prepration of unrelated capital murder
trial styled: State Of Alabama v. Marcus Antwan Russaw, Barbour
County Circuit Court Case No. CC-2002-077, trial counsels, to
assist the state in putting Petitioner on death row, filed a
motion to have Deoxyribonucleic Acid (DNA) testing done on
Petitioner's tennise shoes.

Petitioner emphasizes that had not trial counsels filed
the motion for DNA testing Petitioner would never have been
indicted, tried judged, convicted and sentenced to two (2)
life sentences. The record reflects the trial judge made the
same analysis during Petitioner trial when he stated:

> "I think the DA would be able to counter
> by saying, we felt like and still don't
> feel like those shoes had anything to do
> the other case; it turns out they have a
> lot do in this one."

(T.R. 73, lines 16-21) (Exhibit 12).

Even the district attorney stated during Petitioner's trial the following:

> "Without the blood drop, we wouldn't
> be in the courtroom today."

(T.R. 134, lines 16-18) (Exhibit 21).

Petitioner states that trial counsel arrogantly admitted and at times bosted that it was trial counsel who filed the motion for DNA testing of the Petitioner's tennise shoes:

> "MR. BRUNSON: Judge, they did not do DNA on those shoes for almost two years. They did DNA because **I filed a motion to get the shoes to do the test. And then they realized there was blood on the shoes.**"

> "THE COURT: **Are you saying they didn't know there was blood on the shoes until you told them.**"

> "MR. BRUNSON: **I was the one that filed a motion to ask that they be ordered to turn the shoes over to me so the DNA testing could be done.** I also asked for money to do the DNA testing.

> "You denied both motions.
> **You ordered them to send the shoes up to the forensic lab and have the DNA testing done.**"

(T.R. 70, lines 5-18) (Exhibit 8, lines 5-18).

> "MR. BRUNSON: And then it was almost two years before they chose to have them tested, **and they didn't really choose to have them tested.**"

(T.R. 71, lines 20-22) (Exhibit 10, lines 20-22).

"MR. BRUNSON: **I'm the one that caused the DNA to be done, not the state. They can't take credit for that**."

(T.R. 71, lines 16-17).  (Exhibit 11, lines 16-17).

"MR. BRUNSON: **We can't tell them** (The Jury) **that the DNA testing was done at the request of the defense? I mean, I think that goes to the credibility of the defendant and that's the truth**."

"MR. WHIGHAM: **It might be ineffective assistance of counsel, too**."

"MR. BRUNSON: Mr. Whigham on the Record said, **I don't have any reason to have the DNA testing on the shoes. And I filed a motion asking that we be allowed to take the shoes and test them**."

(T.R. 73, line 6-9 and lines 12-15). Exhibit 12, lines 6-9, and lines 12-15).

## FACTUAL SHOWING OF INCONSISTENT INTEREST

(1). During a pending capital murder proceeding trial counsel's filed a motion to comple the State to produce Petitioner's tennise shoes, which were taken form Petitioner on the day of his arrest, so trial counsel could have them tested for DNA.

(2). The state objected to Petitioner's trial counsel's motion to the Petitioner's tennise shoes tested for DNA because the State had no reason to believe there were DNA on the tennise shoes.

(3). Trial judge heard argument on Petitioner's trial counsel's motion to compel the State to produce Petitioner's tennise shoes for DNA testing and ordered the State to send Petitioner's tennise shoes to the Alabama Department of Forensic Sciences.

(4). The tennise shoes tested negative for DNA of the capital murder victim for which the Petitioner were being in custody.

(5). The tennise shoes tested postive for DNA of a totally unrelated case, one inwhich:

> i). the state had no suspect(s),
> ii). the state had no evidence,
> iii). the state had no arrest, and
> iv). the state had no indictment.

(6). The state had the DNA taken from Petitioner shoes an crossed tested and/or compared with DNA taken form the victim of a bruglary.

(7).  **The DNA matched.**

(8).  The state thereafter indicted Petitioner for Bruglary and Attempted Murder.

(9).  Thereafter,Petitioner stood trial on the Attempted Murder and Bruglary charges.

(10).  The trial court appointed Attorney Paul W. Brunson, Jr., and Attorney John Robertson, to represent Petitioner on the Bruglary and Attempted Murder. The same two attorney's who were previously been appointed to reperesent Petitioner on the capital murder indictment, and who caused the Bruglary and Attemped Murder to be brought.

(11).  Petitioner were founded guilty by jury, based on the evidence which were the DNA taken from Petitioner's shoes at the request of Petitioner's counsel.


## SPECIFIC CIRCUMSTANCES GIVING RISE TO
## CONFLICT OF INTEREST

(1).  The conflict began in Petitioner's capital murder proceedings. Barbour County Circuit Court Case No.CC-2002-077.

(2).  Shortly after appointment, during pretrial investigation Petitioner told counsel, in confidence, and under Attorney Client Privilege that there might be blood on his tennise shoes.

(3).  Undoubthable counsel had to assume that if there were blood on their client's tennise shoes, the blood were the blood of the capital murder victim. As stated in section (2)

above, the district attorney "had no reason to believe there
were blood on the tennise shoes". Plus counsel had no reason
to believe the blood belong to any other victim.

(4).  After learning of the possible blood counsel filed
a motion pursuant to the capital murder case number to have
Petitioner's tennise shoes DNA tested.

(5).  The DNA test were negative for the capital murder
victim, but postive for a victim of an unrealted case, one in
which the had no evidence, no suspects, no arrest, no evidence
and no indictment.

(6).  Based on the DNA testing that was cause to be done
by Petitioner's counsel, Petitioner was indicted, tried, judged,
convicted and sentenced to two life sentence.

Petitioner argues that in this case, under these unusal
circumstances there exist a conflict of interest that Petitioner
were denied effective assistant of counsel.

In Brownlee v. State, 666 So.2d 91 (Ala. Cr. App. 1995),
the court ruled:

> "For counsel to be so ineffective in a conflict
> of interest context that an accused has been denied
> his Sixth Amendment right to counsel, counsel
> must be hampered by an 'actual conflict of interest."

In Browning v. State, 607 So.2d 339, 342 (Ala. Crim. App.
1992), the court ruled:

> "An actual conflict is a real conflict. McConico
> v. Alabama, 919 F.2d 1543, 1546 (11th Cir. 1990).
> An actual conflict of interest occures when a
> defense attorney places himself in a situation
> "inherently conducive to divided loyalties."

"To prove that an actual conflict adversely
affected his counsel's preformance, a defendant
must make a factual showing 'that his counsel's
performance, a defendant must make a factual
showing 'that his counsel actively represented
conflicting interests," Cuyler v. Sullivan, 446
U.S. 335 at 350, 100 S. Ct. 1708 at 1719, 64
L. Ed. 2d 333 (1980) """and must demonstrate that
the attorney "made a choice between possible
alternative courses of action, such as eliciting
(or failing to elicit) evidence helpful to one
client but harmful to the other,"'" Barham v.
United States, 724 F.2d 1529, 1532 (11th Cir. 1984)

Molton v. State, 651 So.2d 663 (Ala. Crim. App. 1994)

In Brannon v. State, 699 So.2d 1298 (Ala. Cr. App. 1996)
the court ruled:

"If an actual conflict of interest is present,
the defendant need not prove that he has been
prejudiced, because 'prejudice is presumed'".

In Dallas v. State, 711 So.2d 1101 (Ala. Crim. App. 1997),
the court ruled:

"In order to demonstrate a violation of his
Sixth Amendment rights, a defendant must show
that an actual conflict of interest adversely
affected his lawyer's preformance." Cuyler v.
Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708,
1719, 64 L. Ed. 2d 333 (1980)."

In Davis v. State, 720 So.2d 1006 (Ala. Crim. App. 1998),
the court ruled:

"On claim of ineffective assistance of counsel,
fair assessment of attorney performance requires
that every effort be made to eliminate distorting
effects of hindsight, to reconstruct circumstances
of counsel's challenged conduct," Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.
Ed. 2d 674 (1984), Duren v. State, 590 So.2d 360,
362 (Ala. Cr. App. 1990),' "and to evaluate conduct
from counsel's perspective at the time; because

> because of the difficulties inheret in making
> evaluation, court must indulge a strong
> presumption that counsel's conduct falls within
> wide range of reasonable professional assistance,"
> <u>Luck v. State</u>, 484 So.2d 531, 534 (Ala. Cr. App..
> 1985), "and defendant must overcome presumption
> that, under the circumstances, challenged action
> might be considered sound trial straegy."

Which means the burden is on the Petitoner to show that
his counsel's conduct was deficient, <u>Ex Parte Lawley</u>, 512 So.2d
1370, 1372 (Ala. 1978); Falkner v. State, 586 So.2d 39 (Ala. Cr.
App. 1991).

In the case of <u>Hallford v. State</u>, 629 So.2d 6, 8-9 (Ala.
Cr. App. 1992), the court ruled:

> "In determing whether a defendant has
> established his burden of showing that his
> counsel was ineffective, we are not required
> to address both considerations of the Strickland
> v. Washington, test if the defendant makes an
> insufficient showing on one of the prongs. Id.
> at 698, [104 S.Ct. 2052]. In fact, the Court
> explained that 'if it is easier to dispose of
> an ineffectiveness claim on the ground of lack
> of sufficient prejudice, which we expext will
> often be so, this guidance and address the
> 'prejudice' prong, for 'with respect to the
> prejudice' component, the lack of merit of
> Thomas's claim is even more stark.' Id. 511
> So.2d 248, 255 (Ala. Cr. App. 1998).

WHETHER CO-COUNSEL WERE INEFFECTIVE DUE
TO ACTUAL CONFLICT OF INTEREST WHERE
THAT CONFLICT HAD ADVERSE EFFECT ON
CO-COUNSEL'S PERFORMANCE WHICH HAD A
PREJUDICIAL EFFECT AND DEPRIVED HIM OF
A FAIR TRIAL?

During the pretrial prepration of unrelated capital murder
trial styled: State Of Alabama v. Marcus Antwan Russaw, Barbour
County Circuit Court Case No. CC-2002-077, trial counsels, to
assist the state in putting Petitioner on death row, filed a
motion to have Deoxyribonucleic Acid (DNA) testing done on
Petitioner's tennise shoes.

Petitioner emphasizes that had not trial counsels filed
the motion for DNA testing Petitioner would never have been
indicted, tried judged, convicted and sentenced to two (2)
life sentences. The record reflects the trial judge made the
same analysis during Petitioner trial when he stated:

"I think the DA would be able to counter
by saying, we felt like and still don't
feel like those shoes had anything to do
the other case; it turns out they have a
lot do in this one."

(T.R. 73, lines 16-21) (Exhibit 12).

Even the district attorney stated during Petitioner's
trial the following:

> "Without the blood drop, we wouldn't
> be in the courtroom today."

(T.R. 134, lines 16-18) (Exhibit 21).

Petitioner states that trial counsel arrogantly admitted and
at times bosted that it was trial counsel who filed the motion
for DNA testing of the Petitioner's tennise shoes:

> "MR. BRUNSON: Judge, they did not do DNA
> on those shoes for almost two years. They
> did DNA because <u>I filed a motion to get
> the shoes to do the test. And then they
> realized there was blood on the shoes.</u>"

> "THE COURT: <u>Are you saying they didn't
> know there was blood on the shoes until
> you told them.</u>"

> "MR. BRUNSON: <u>I was the one that filed a
> motion to ask that they be ordered to turn
> the shoes over to me so the DNA testing
> could be done.</u> I also asked for money to
> do the DNA testing.

> "You denied both motions.
> <u>You ordered them to send the shoes up to
> the forensic lab and have the DNA testing
> done</u>."

(T.R. 70, lines 5-18) (Exhibit 8, lines 5-18).

> "MR. BRUNSON: And then it was almost two
> years before they chose to have them tested,
> <u>and they didn't really choose to have them
> tested.</u>"

(T.R. 71, lines 20-22) (Exhibit 10, lines 20-22).

"MR. BRUNSON: **I'm the one that caused the DNA to be done, not the state. They can't take credit for that.**

(T.R. 71, lines 16-17).    (Exhibit 11, lines 16-17).

"MR. BRUNSON: **We can't tell them** (The Jury) **that the DNA testing was done at the request if the defense? I mean, I think that goes to the credibility of the defendant and that's the truth.**"

"MR. WHIGHAM: **It might be ineffective assistance of counsel, too.**"

"MR. BRUNSON: Mr. Whigham on the Record said, **I don't have any reason to have the DNA testing on the shoes. And I filed a motion asking that we be allowed to take the shoes and test them.**"

(T.R. 73, lines 6-9 and lines 12-15).    (Exhibit 12, lines 6-9, and lines 12-15).

## FACTUAL SHOWING OF INCONSISTENT INTEREST

(1). During a pending capital murder proceeding trial counsel's filed a motion to comple the State to produce Petitioner's tennise shoes, which were taken from Petitioner on the day of his arrest, so trial counsel could have them tested for DNA.

(2). The state objected tp Petitioner's trial counsel's motion to the Petitioner's tennise shoes tested for DNA because the State had no reason to believe there were DNA on the tennise shoes.

(3). Trial judge heard argument on Petitioner's trial counsel's motion to compel the State to produce Petitioner's tennise shoes for DNA testing and ordered the State to send Petitioner's tennise shoes to the Alabama Department of Forensic Sciences.

(4). The tennise shoes tested negative for DNA of the capital murder victim for which the Petitioner were being in custody.

(5). The tennise shoes tested postive for DNA of a totally unrelated case, one inwhich:

      i).      the state had no suspect(s),
      ii).     the state hos no evidence,
     iii).    the state had no arrest, and
     iv).     the state had no indictment.

(6). The state had the DNA taken from Petitioner shoes anb crossed tested and/or compared with DNA taken from the victim of a bruglary.

(7). **The DNA matched.**

(8). The state thereafter indicted Petitioner for Bruglary and Attempted Murder.

(9). Thereafter, Petitioner stood trial on the Attempted Murder and Bruglary charge.

(10). The trial court appointed Attorney Paul W. Brunson, Jr., and Attorney John Robertson, to represent Petitioner on the bruglary and Attempted Murder. The same two attorney's who were previouly been appointed to represent Petitioner on the capital murder indictment, and who caused the Bruglary and ATtempted Murder to be brought.

(11). Petitioner were found guilty by jury, based on the evidence which were the DNA taken from Petitioner's shoes at the request of Petitioner's counsel.

## SPECIFIC CIRCUMSTANCES GIVING RISE TO
## CONFLICT OF INTEREST

(1). The comflict began in Petitioner's capital murder proceedings. Barbour County Circuit Court Case No. CC-2002-077.

(2). Shortly after appointment, during pretrial investigation Petitioner told counsel, in confidence, and under Attoenry Client Privilege that there might be blood on his tennise shoes.

(3). Undouthable counsel had to assume that if there were blood on their client's tennise shoes, the blood were the blood of the capital murder victim. As stated in section (2)

> because of the difficulties inheret in making
> evaluation, court must indulge a strong
> presumption that counsel's conduct falls within
> wide range of reasonable professional assistance,"
> Luck v. State, 484 So.2d 531, 534 (Ala. Cr. App..
> 1985), "and defendant must overcome presumption
> that, under the circumstances, challenged action
> might be considered sound trial straegy."

Which means the burden is on the Petitoner to show that his counsel's conduct was deficient, Ex Parte Lawley, 512 So.2d 1370, 1372 (Ala. 1978); Falkner v. State, 586 So.2d 39 (Ala. Cr. App. 1991).

In the case of Hallford v. State, 629 So.2d 6, 8-9 (Ala. Cr. App. 1992), the court ruled:

> "In determing whether a defendant has
> established his burden of showing that his
> counsel was ineffective, we are not required
> to address both considerations of the Strickland
> v. Washington, test if the defendant makes an
> insufficient showing on one of the prongs. Id.
> at 698, [104 S.Ct. 2052]. In fact, the Court
> explained that 'if it is easier to dispose of
> an ineffectiveness claim on the ground of lack
> of sufficient prejudice, which we expext will
> often be so, this guidance and address the
> 'prejudice' prong, for 'with respect to the
> prejudice' component, the lack of merit of
> Thomas's claim is even more stark.' Id. 511
> So.2d 248, 255 (Ala. Cr. App. 1998).

Petitioner argues that his cocounsel were ineffective due to actual conflict of interest where that conflict had adverse effect on cocounsel's performance which had a prejudical effect and deprived him of a fair trial.

In the case of **Freund v. Butterworth**, 117 F.3d 1543, (11th Cir. 1997), the court ruled:

"If one attorney in firm has actual conflict
of interest, court imputes that conflict to all
attorney in firm."

This theory as applied to the concept of a "firm" applied
to the concept of a "firm" applies likewise to the principle of
"co-counsel".

> ¶If lead counsel has an actual conflict
> of interest, court must imputes that conflict
> to co-counsel."

Cocounsel in this case is John Robertson, whom stood by
and allowed lead counsel Paul W. Burnson, Jr., to violate
Petitioner's right to remain slient, right against self-
incrimination, privilege and confidentiality, when counsel
filed a motion to have Petitioner's tennise shoes DNA tested
which caused Petitioner to be indicted, tried, convicted and
sentenced to two (2) life sentences for Bruglary and Attempted
Murder as outlined in the ground for relief:

> WHETHER TRIAL COUNSEL WERE INEFFECTIVE
> DUE TO ACTUAL CONFLICT OF INTEREST WHERE
> THAT CONFLICT HAD ADVERSE EFFECT ON TRIAL
> COUNSEL'S PERFORMANCE WHICH HAD A PERJUDICIAL
> EFFECT AND DEPRIVED PETITIONER OF A FAIR
> TRIAL.